J-S54013-19

2019 PA Super 357

| H.R. AND C.A.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| C.P. AND J.M. | : | |
| | : | |
| | : | No. 807 MDA 2019 |
| APPEAL OF: C.P. | : | |

Appeal from the Order Entered April 5, 2019
In the Court of Common Pleas of Schuylkill County Civil Division at
No(s):  S-1868-2011

BEFORE:  BOWES, J., LAZARUS, J., and DUBOW, J.

OPINION BY BOWES, J.: **FILED DECEMBER 18, 2019**

C.P. ("Father") appeals from the April 5, 2019 custody order that granted the exceptions filed by the maternal grandparents, H.R. and C.A.R. (collectively "Grandparents"), to the custody officer's report and recommendation, denied Father's counter-exceptions, and awarded Father periods of supervised physical custody of his ten-year-old son, L.P.  We affirm.

L.P. was born in May 2009, of Father's relationship with J.M. ("Mother"), whom Father met while they were students at Penn State University.  Mother and Father both struggle with substance abuse, and Father's recreational use of marijuana has been a recurring issue throughout the custody litigation.[1]

---

[1] According to the custody report that the court-appointed custody evaluator prepared in 2012, Father acknowledged that he "us[ed ]marijuana for recreational and social purposes" since he was eighteen.  N.T., 6/25/15, Exhibit 1, Custody Evaluation, 5/30/12 at 10.  Likewise, Mother reported that

The relationship remained intact for the first few years of L.P.'s life. During this period, the family was transient, and it faced financial hardships. Following L.P.'s birth, Mother and Father moved from Pennsylvania to Michigan, in order for Father to obtain a medical marijuana license in that state. Thereafter, they relocated to Georgia, briefly, before settling in Maryland immediately before the relationship dissolved during 2012, when L.P. was approximately three years old.

Since July 2012, Grandparents have maintained primary physical custody of L.P. pursuant to a stipulated order that was entered after Mother alleged that Father fed L.P. a "fire cracker," which Mother described as a Graham cracker topped with marijuana-laced peanut butter. All four individuals shared legal custody. Mother, who resided with Grandparents in Tamaqua, Pennsylvania, for most of the ensuing period, now lives independently, in Ambler, Pennsylvania and exercises periods of physical custody for up to four hours on alternating weekends. Similarly, Father exercises three hours of supervised visitation on alternating Saturdays. His relationship with Grandparents is strained, and Father contends that Grandparents intentionally relocated with L.P. from Tamaqua to Denver, Pennsylvania, after Father moved to Tamaqua to be closer to his son. He

_____

Father's fixation with marijuana use was "definitely an issue" for the couple. *Id*. at 9. She explained, "[Father was more interested in growing marijuana than anything else, and he discussed this openly. After [Father's] mother found plants growing [in the home that Mother, Father, and L.P. were staying as guests], she asked [Father] to leave." *Id*. at 8.

complains that it takes approximately two hours to travel from Tamaqua to Denver, which is about a fifty-five mile car trip. Grandparents counter that the duration is closer to one and one-quarter hour.

During 2014, Father filed a motion to modify the 2012 custody stipulation. Following a procedural misstep, the modification request culminated in a complete custody trial and a determination of L.P.'s best interests pursuant to the relevant factors outlined in § 23 Pa.C.S. § 5328(a).[2]

_____

[2] Pursuant to 23 Pa.C.S. § 5328(a), the determination of a child's best interest requires the examination of the following factors:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

_____

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328. It is within the trial court's purview as the finder of fact to determine which enumerated best-interest factors are most salient and critical in each particular child custody case. *M.J.M. v. M.L.G.*, 63 A.3d 331 (Pa.Super. 2013). The trial court weighed the applicable custody factors in awarding Grandparents primary physical custody. In this vein, it found that thirteen of the applicable factors militated to varying degrees in favor of Grandparents. Factors six, seven, and eight were either neutral or inapplicable. None of the factors favored Father.

As it relates to the issue presented on appeal, the trial court awarded Grandparents physical custody pursuant to the terms of the initial 2012 stipulation except that it added a provision that conditionally extinguished the supervision requirement "upon Father's willingness to demonstrate sobriety and continued abstinence." Trial Court Order,7/2/15, at 1. In pertinent part, the addendum provided,

1. The Order Of Court dated July 16, 2012 per Baldwin, P.J., shall remain in full force and effect except that the Order is hereby amended to include the following with regard to Father's supervised partial physical custody as follows:

3(d). Father shall be provided the opportunity for unsupervised contact within his home setting on alternating Saturdays for three (3) hours provided and contingent upon Father's willingness to demonstrate sobriety and continued abstinence through submission to hair follicle tests to be conducted by Compliance Drug and Testing Services, LLC., "NE Compliance" at intervals of six (6) months for two (2) years from the date of this Order. In the event the first test administered within thirty (30) days -of the date of this Order is negative, then Father may have the aforementioned unsupervised visitation provided that he continues to submit to the other hair follicle tests. It is agreed by [Grandparents] that they shall pay and be responsible for the hair follicle test fees submitted by NE Compliance to them. Furthermore, Father shall sign a release authorizing NE Compliance to release the test result reports to [Grandparents'] counsel who shall be authorized to provide copies of the same to Mother and the [Grandparents].

3(e). In the event that any of the four (4) the hair follicle tests are positive then supervised visitation shall continue until Father tests negative.

*Id*. at 1-2.

The 2015 custody schedule continued unchanged until Father filed his most recent petition for modification on June 12, 2018. In addition to a general assertion that the prevailing custody arrangement was contrary to L.P.'s best interest, Father contended that, in light of his newly-acquired license to use medical marijuana as a mechanism to manage wrist pain, the trial court should not weigh the fact of his marijuana use against him. In this vein, Father argued, "Marijuana is now a state recognized medicine and shouldn't be used to keep children from parents." Petition for Modification of Custody, 6/12/18, at 2. Following two non-consecutive days of evidentiary hearings pursuant to Pa.R.C.P. 1915.4-2(b) (regarding record hearings for determinations of partial custody), the custody officer filed a report noting its consideration of the best-interest factors and a recommendation that the trial court (1) terminate the drug-testing conditions on Father's ability to exercise unsupervised custody, and (2) significantly increase the duration and nature of Father's three-hour period of supervised partial physical custody to nine hours of unsupervised custody on alternating Saturdays. It further recommended that Father's custodial periods increase to overnights in May 2019.

Grandparents filed exceptions to the custody officer's report and recommendation. In relevant part, Grandparents challenged the hearing officer's findings regarding Father's alleged medical condition and purported certification for medical marijuana, and its reliance upon the certification to discount Father's history of recreational drug use, and to remove the

requirement that he submit negative drug-screens before exercising unsupervised physical custody. Subsumed within these arguments is Grandparents' contention that the custody officer erred in admitting into evidence Father's documentation concerning both his medical condition and his certification to use medical marijuana. They also complained that the hearing officer neglected to consider the presence of Father's housemates before awarding unsupervised overnight custody, and that the record did not sustain Father's supposition that Grandparents moved from Tamaqua out of spite or that Father was the primary caretaker when the family lived in Maryland.

While Father filed "counter exceptions," he did not assert any challenges relating to the hearing, report, or recommendation. Father simply responded to Grandparents' exceptions by presenting countervailing statements in opposition to Grandparents' contentions. Upon review of the record, the trial court entered the above-referenced order that granted all eight of Grandparents' exceptions and denied Father's counter exceptions.

Specifically, the trial court concluded that, upon review of the § 5328(a) factors and the safety concerns raised by Mother and Grandparents, it served L.P.'s best interests to continue with the prior custody arrangement and to reinstate the hair-follicle-testing condition to unsupervised physical custody. Trial Court Opinion, 4/5/19, at 12. The court continued,

> it is unknown from the record what effect Father's alleged medical condition and use of marijuana, whether medically prescribed or used recreationally, may have on his ability to care for and parent

- 7 -

the child.  [Additional] . . . admissible evidence is necessary before an increase in Father's custodial time would be warranted to insure the child's safety and well-being.

*Id*.  Significantly, the trial court determined that the custody officer erred in relying upon Father's contention that he was certified to use medical marijuana, as Father failed to present medical evidence to establish either a wrist affliction that necessitates its use or the effect that the use of medical marijuana will have on Father's parenting ability.  *Id*. at 12-13.  It concluded, "without benefit of testimony from the doctor who Father alleges authorized the use of medical marijuana, it is not in the best interest of the child to expand Father's partial custody."  *Id*. at 13.

This timely *pro se* appeal followed.  Father initially failed to comply with Pa.R.A.P. 1925(a)(2)(i) by contemporaneously filing a concise statement of errors complained of on appeal.  On June 5, 2019, this Court entered an order directing Father to file and serve the Rule 1925(b) statement with the trial court by June 12, 2019.  He filed the required statement within the designated period, and the trial court entered an order directing our attention to its opinion entered on April 5, 2019.

Father presents two issues for our review:

1.    Whether the court may ignore a properly [*bona fide*] registered medical marijuana card & certificate as substantiated evidence.

2.    [The trial court relied upon h]earsay or [un]substantiated evidence to show [Father's] abuse of [marijuana].

Father's brief at unnumbered 2.

Our standard of review is well-settled.

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa.Super. 2012) (citations omitted). As it relates to our deference to the trial court's role in reviewing the factual findings of a custody officer, we previously explained that

the trial court is required to make an independent review of the record to determine whether the hearing officer's findings and recommendations are appropriate. Although advisory, the hearing officer's report and recommendations are given the fullest consideration particularly on the issue of credibility of witnesses, which the trial court is not empowered to second-guess.

*T.B. v. L.R.M.*, 753 A.2d 873, 881-82 (Pa.Super. 2000) (*en banc*) (cleaned up).

The argument section of Father's brief is deficient.[3] In its entirety, the section provides:

_____

[3] Father's legal argument is undeveloped and without citation to any legal authority. It is beyond cavil that, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is

Argument

My personal good track record and trying to be the most fit – presenting father I can be and use a safe natural medicine now approved by the PA state law should assumedly [sic] be considered fit and allow. . . my natural rights as [F]ather [to be] restored - as well as . . . [M]other in my argument as we both should be by default fit until proven unfit. There [are] no grounds to assume otherwise and request natural parents be given full rights back to raise our child as we see fit and by default assume that is one to fulfill the 16 factors of best interest of the child since naturally we have instinct to care for our own flesh and blood and successor to our genetics. [M]other and myself both love our child very much and should be given in light of this a chance to be free of control in the raising of our child.[4]

Conclusion

I am a [*bona fide*] medical marijuana participant with [a Pennsylvania] ID card[.] [Grandparents did not present] substantiated evidence to show abuse or suggest [that] I would be unsafe around my child (as protected by medical marijuana act). [M]other is an excellent parent and has shown to be responsible with finding work and being there for my son as much as [G]randparents allow. . . .

Father's brief at 4-5. No relief is due.

Father's claims invoke the Medical Marijuana Act, which provides, in

pertinent part,

_____

waived." **In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011). Instantly, however, we address the merits of Father's claim because the deficiency does not interfere with our review of his central claim that the trial court ignored the Medical Marijuana Act.

[4] Mother did not file a brief in this appeal. During the October 2018 custody hearing, she noted her support of Grandparents' continuing exercise of primary custody, at least until she "can provide a nice home and a good school and everything that comes along with that." N.T., 10/17/18, at 52.

(c) Custody determination.--The fact that an individual is certified to use medical marijuana and acting in accordance with this act shall not by itself be considered by a court in a custody proceeding. In determining the best interest of a child with respect to custody, the provisions of 23 Pa.C.S. Ch. 53 (relating to child custody) shall apply.

35 P.S. § 10231.2103 (c).

From the foregoing excerpt, the statements of questions presented, and other declarative statements that Father asserts in his brief, we can discern two facets to Father's argument. Preliminarily, he contends that the trial court erred in discounting as inadmissible the evidence that he produced to establish his medical condition and his certification to use medical marijuana in Pennsylvania. Father argues that the medical marijuana identification card issued by the Commonwealth was admissible evidence under the business record exception to the prohibition against hearsay. As to the evidence of his underlying wrist injury and medical diagnosis, Father asserts that it would be impractical to require him to present the testimony of his physician.

Unfortunately for Father, these arguments are predicated upon the faulty legal position that, upon demonstrating his certification to use medicinal marijuana, the Medical Marijuana Act barred the court from considering any aspect of its use in reaching the best interest determination. As our review of this latter aspect of Father's claim is dispositive, we need only address the merits of that component.

We reject Father's contention that the trial court flouted the legislature's directive to forego consideration of marijuana use in the determination of

L.P.'s best interests. Chiefly, this argument fails because the trial court did not weigh the fact of Father's purported certification against him. In reality, the court examined Father's well-documented history of recreational drug use, including the allegations that Father laced his toddler's food with marijuana, incorporated those considerations into its best-interest determination, and concluded that it served L.P.'s best interests to employ the proven custody arrangement that had been in effect since 2012 and to reinstate the hair-follicle-testing conditions of unsupervised custody. Trial Court Opinion, 4/5/19, at 12.

Plainly, the Medical Marijuana Act does not preclude the trial court from making relevant findings concerning the effect of marijuana use, whether medical or recreational, on a parent's ability to care for his or her child. Indeed, contrary to Father's assertion, the Medical Marijuana Act expressly reaffirms § 5328(a) as the controlling mechanism for determining a child's best interest. *See* 35 P.S. § 10231.2103(c) ("In determining the best interest of a child with respect to custody, the provisions of 23 Pa.C.S. Ch. 53 (relating to child custody) shall apply."). That statutory framework explicitly requires the fact-finder to consider not only a parent's history of drug and alcohol use but also their mental health and physical conditions. Thus, rather than requiring the court to ignore Father's marijuana use, the Medical Marijuana Act obligated the trial court to contemplate Father's physical condition, *i.e.* the nerve pain he complains of in his right wrist, and his reliance upon medication to subdue that pain. By way of comparison, OxyContin®, Vicodin®, codeine,

and morphine are legal substances when prescribed by a physician; however, it is beyond cavil that, prior to making a custody determination, § 5328(a)(14) and (15) mandates that a trial court consider how a parent's legal use of any of these substances impacts his or her child's best interest. That is precisely the analysis that the trial court performed in the case at bar.

Moreover, notwithstanding Father's protestations to the contrary, the certified record establishes that Father previously abused marijuana and was unsafe around his child. In this vein, during the October 2018 evidentiary hearing, Mother confirmed that she and Father engaged in the illegal use of marijuana recreationally and recounted Father's feeding to L.P. a marijuana-laced snack. N.T., 10/17/18, at 47-48. While Father continues to challenge the veracity of Mother's testimony, the trial court made credibility determinations in Mother's favor on these precise points during the 2015 litigation, and since the certified record supports those findings, we will not disturb them. **See** Trial Court Opinion, 6/25/15, at 8-9.

Accordingly, for all of the foregoing reasons, Father's argument that the trial court violated the Medical Marijuana Act is baseless. While that act prohibits the fact-finder from penalizing a parent **simply** for utilizing medical marijuana, the trial court did not deny Father's motion to modify custody simply because Father sought to utilize a medical marijuana card. In actuality, following its consideration of the enumerated best-interest factors in light of the testimony presented during the two-day evidentiary hearing, the trial court concluded that it was not in L.P.'s best interests to expand Father's

three-hour period of supervised partial custody to unsupervised overnight custody without requiring Father to continue to submit to the drug screening regimen. Thus, no relief is due.[5]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/18/2019

---

[5] In addition to sustaining Grandparents' exceptions for the above-referenced reasons, the trial court accurately determined that the custody officer neglected to address best interest factors two, fourteen, and fifteen in relation to the unidentified members of Father's household. **See** Trial Court Opinion, 4/5/19, at 14 ("It is unknown whether Father's home is safe and appropriate for the child at the present time. The Custody Conciliation Officer failed to establish the identity and the background of the residents of Father's home in accordance with the [best interest] factors[.]").