J-A09003-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KRYSTIN REEG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEREMY GRIMES | : | No. 1392 WDA 2024 |

Appeal from the Order Dated October 9, 2024
In the Court of Common Pleas of Lawrence County Civil Division at
No(s):  Docket No. 10804 of 2022 C.A.

BEFORE:  KUNSELMAN, J., NICHOLS, J., and LANE, J.

MEMORANDUM BY KUNSELMAN, J.:                    **FILED: JULY 16, 2025**

In this matter, Krystin Reeg (Mother) appeals from the order, entered by the Lawrence County Court of Common Pleas, which denied her petition for interim custody relief and for contempt against Jeremy Grimes (Father).  After review, we affirm.

We discern the following factual and procedural background from the trial court's opinion filed pursuant to Appellate Rule 1925(a).  Mother and Father are the parents of a now eight-year-old son, D.G. (the Child).  They have been involved in a lengthy and contentious custody dispute regarding the Child since September 29, 2022, when Mother filed a custody complaint. Thereafter, the trial court issued a series of interim custody orders.  While the interim orders were in place, Mother filed two emergency petitions/motions for special relief.

The trial court held a custody trial beginning on October 26, 2023, which included an *in camera* interview of the Child. On January 3, 2024, the court issued its final custody order (the Final Custody Order), findings of fact, and conclusions of law. The Final Custody Order awarded Mother and Father shared legal custody of the Child. Mother was awarded primary physical custody, and Father received partial physical custody on a transitional schedule, conditioned on the results of a hair follicle test. The Final Custody Order incorporated an Appendix with additional provisions, which Mother and Father were ordered to follow.

The trial court's extensive factual findings included, *inter alia*, that: 1) Mother and Maternal Grandmother had tried to alienate the Child from Father and had inappropriately influenced the Child's attitude toward Father; 2) Mother's and Maternal Grandmother's actions were harmful to the Child and to the Child's relationship with Father and had greatly hindered their reconciliation; 3) Mother was not a credible witness and had coached the Child on what to say to keep Father away from him; and 4) the parental alienation on behalf of Mother was a "huge concern" to the trial court and was to such a degree that a change in primary custody could be considered. **See** Trial Court Opinion (T.C.O.), 12/6/24, at 5-7.

Thereafter, from January to June 2024, Mother filed a series of motions and petitions including a Motion for Reconsideration, a Motion for Contempt and Special Relief, a Petition for Special Relief – Therapy, and a Petition for Contempt. The trial court ultimately found Father in contempt of the Final

Custody Order in July 2024 for his willful failure to utilize the OurFamilyWizard (OFW) application, and for failing to submit to a hair follicle test.

On September 20, 2024, Mother filed the instant Petition for Interim Relief and for Contempt (the Petition), alleging that Father exposed the Child to marijuana and violated four provisions of the Final Custody Order and Appendix. The court scheduled a hearing on the Petition for October 2, 2024, and modified and limited Father's custodial time, pending the hearing.

At the hearing, Mother, the Child's guardian *ad litem* (GAL), Paternal Grandfather, and Father testified, with Father proceeding *pro se*. After the hearing, the trial court denied Mother's Petition, reinstated Father's full custodial time, and awarded Father make-up custodial time.

Mother timely filed this appeal.[1] She presents the following four issues for our review, which we reorder for ease of disposition:

1. Whether the Trial Court abused its discretion and erred as a matter of law by finding that Mother did not sustain her burden to establish that Father knowingly violated the current custody order and thereby failing to find Father in contempt of the January 3, 2024 Order of Court.

---

[1] Father, proceeding *pro se*, did not file a brief in this matter. The GAL filed a brief in which she stated that she "does not agree with the [t]rial [c]ourt's decision to deny Mother's Petition for Interim Relief." GAL's Brief at 5. However, the GAL "respectfully decline[d] to take a position as to whether the [t]rial [c]ourt abused its discretion and committed errors of law on any of the four issues raised on appeal as the best interest of the [C]hild is not the subject matter of this appeal." *Id.* at 6. Thus, the GAL's brief does not include argument on any of the issues raised in this appeal.

2. Whether the Trial Court abused its discretion and committed errors of law in denying Mother's Petition for Interim Relief and for Contempt of the January 3, 2024 Order of Court.

3. Whether the Trial Court abused its discretion and erred as a matter of law by reinstating Father's custody time as outlined in the January 3, 2024 Order of Court and in awarding Father an additional weekend of custodial time with the [C]hild.

4. Whether the Trial Court abused its discretion and erred as a matter of law in failing to postpone the hearing or keep the record open, pending resolution and/or a determination of the CYS investigation, forensic interview of the [C]hild, and criminal investigation.

Mother's Brief at 4-5.

Mother's first issue challenges the trial court's determination that Father was not in contempt of the Final Custody Order and Appendix. Our standard of review concerning a trial court's contempt findings is well-settled:

> This [C]ourt's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.

**B.A.W. v. T.L.W.**, 230 A.3d 403, 406 (Pa. Super. 2020) (citation omitted).

Moreover, "[t]his Court defers to the credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor." **Harcar v. Harcar**, 982 A.2d 1230, 1236 (Pa. Super. 2009) (citations omitted).

- 4 -

The Child Custody Act provides:

> **(g) Contempt for noncompliance with any custody order.--**
>
> > (1) A party who willfully fails to comply with any custody order may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
> >
> > > (i) Imprisonment for a period of not more than six months.
> > >
> > > (ii) A fine of not more than $500.
> > >
> > > (iii) Probation for a period of not more than six months.
> > >
> > > (iv) An order for nonrenewal, suspension or denial of operating privilege under section 4355 (relating to denial or suspension of licenses).
> > >
> > > (v) Counsel fees and costs.

23 Pa.C.S.A. § 5323(g)(1)(i-v).

To establish that a party is in civil contempt, the petitioner must prove three prongs by a preponderance of the evidence: 1) that the contemnor had notice of the specific order that he or she is alleged to have disobeyed; 2) that the act which constituted the contemnor's violation was volitional; and 3) that the contemnor acted with wrongful intent. **B.A.W.**, 230 A.3d at 406 (citations omitted).

On appeal, Mother argues that she proved Father violated four provisions of the Final Custody Order and Appendix for which the trial court should have held him in contempt. We reproduce, in relevant part, the four at-issue provisions:

[Paragraph] 7. Both parties are **ORDERED** to immediately open an account with [OFW] …. Communication [. . .] shall be via the [OFW] website within 24-hours that notice of such events or appointments are received. [. . .] The parties shall check the website every day and respond immediately to any posting of the other parent even if only acknowledging receipt of the communication.[]

[Paragraph] 17. The parties shall abide by the terms of the Appendix attached hereto, incorporated herein, and made a part hereof. The parties shall read the Appendix immediately and shall familiarize themselves with the provisions contained therein.

[Appendix] Rule 9. Each party should encourage telephone and other electronic communications between the child(ren) and the other party… Each party should promptly and politely respond to the other party's telephone calls, te[x]t messages, and/or emails.[]

[Appendix] Rule 12. Appropriate care of the child while in the custody of either party includes proper hygiene and administration of any medicines, creams, and/or ointments necessary for health maladies from which the child suffers. Each party must notify the other party if any emergency or illness requiring a physician's attention should occur concerning the child(ren) while in his or her physical custody…

T.C.O. at 13 (internal quotation marks omitted); *see also* Order of Court, 1/3/24, at 18-20; Appendix to Custody Order, 1/3/24, at 3 (unnumbered).

Mother argues that Father violated Paragraph 7 above by routinely failing to check OFW daily, and that Father's exhibits supported her credible testimony. *See* Mother's Brief at 17. Conversely, the trial court noted that both Mother and Father submitted evidence regarding their OFW use. T.C.O. at 13. The court found that "Father had been substantially compliant with the Order . . . in that he logged into [OFW] almost every day, with only a day or

- 6 -

two between log-ins."[2]  *Id.* at 14.  The court found that Father's conduct did not amount to a willful or intentional disregard for the Final Custody Order, and that Father's explanation for not logging on was credible.  *Id.*

Mother asserts that Father violated Appendix Rule 9 and Paragraph 17 above by not permitting her to speak to the Child during Father's custodial time.  *See* Mother's Brief at 18.  Mother claims that because Father admitted at the hearing that he is no longer allowing or encouraging this communication, it is undisputed that Father's actions were volitional and committed with wrongful intent.  *See id.* at 18-19.

Conversely, the trial court explained that the Final Custody Order does not require telephone communication between Mother and the Child, and Appendix Rule 9 only encourages such communication, which Mother claims

---

[2] Mother asserts that substantial compliance is not "sufficient rationalization for failing to sustain a contempt finding."  *See* Mother's Brief at 18.  To support this argument, she provides the following citation: ***Llaurado v. Garcia-Zapata***, 144 A.3d 204, No. 1637 EDA 2015 (Pa. Super. 2016).  However, this citation is to an unpublished memorandum that was filed in March 2016.  Because this is a non-precedential decision dated before May 1, 2019, it cannot properly be cited for any purpose.  *See* Pa.R.A.P. 126(b).

We note that this is not the only instance where Mother cited a non-precedential decision dated before May 1, 2019, in contravention of our Appellate Rules.  *See* Mother's Brief at 13 (citing ***S.T.W. v. M.J.T.***, No. 1809 WDA 2014, 2015 WL 5876200 (unpublished memorandum dated May 12, 2015)); *Id.* at 17 (citing ***C.W.C. v. S.E.C.-W.***, No. 1932 EDA 2014, 2015 WL 7288098 (Pa. Super. 2015) (unpublished memorandum dated April 10, 2015)); *Id.* at 24 (citing ***B.N.D. v. J.A.S.***, No. 844 MDA 2015, 2015 WL 6460291 (Pa. Super. 2015) (unpublished memorandum dated October 6, 2015)).  We remind and caution Mother and her counsel that compliance with our Appellate Rules is mandatory.

is an error. T.C.O. at 14; *see* Mother's Brief at 19. Additionally, the court noted that Father introduced evidence that showed the same behavior by Mother. T.C.O. at 14. The court found that, even assuming Appendix Rule 9 required telephone communication between Mother and the Child, Mother failed to submit sufficient evidence to prove that Father willfully and deliberately disobeyed the Final Custody Order. *Id.* at 15.

Lastly, Mother argues that Father violated Appendix Rule 12 and Paragraph 17 above because the Child sustained a rash while in Father's custody, and Father did not provide medical care. *See* Mother's Brief at 18-20. Mother asserts that her testimony was credible, and the rash was serious and caused the Child great pain and discomfort. *See id.* at 20.

Conversely, the trial court found that "Father's testimony regarding the need to administer medication was credible and [] Father's conduct did not amount to a willful disregard" of the Final Custody Order. T.C.O. at 15. Thus, the court found that Father did not willfully or intentionally violate Appendix Rule 12. *Id.*

Overall, the trial court determined that Mother proved the first civil contempt prong, *i.e.*, that Father had sufficient notice of the Final Custody Order and Appendix. *See id.* However, the court "weighed the evidence and credibility of the witnesses regarding the Father's alleged contempt and found that the Mother failed to prove, by a preponderance of the evidence, that the Father intentionally and willfully disobeyed" the court order. *Id.* at 15-16.

Mother's argument fails to appreciate the standard of review we must apply to contempt findings in our role as an error correcting appellate court. We may only reverse if the trial court abused its discretion. *See B.A.W., supra*. Further, we defer to the trial court's credibility determinations. *See Harcar, supra*.

Here, for Paragraph 7, the trial court found Father credible in his explanation that he logs into OFW regularly, and the screenshots Mother produced were days that he "may have accidentally missed[.]" N.T., 10/2/24, at 59. Thus, the court found that Father did not act with wrongful intent, *i.e.*, Mother failed to prove the third prong of the civil contempt analysis. *See B.A.W.*, 230 A.3d at 406 (citations omitted). This is ultimately a matter of credibility, and we defer to the trial court. *See Harcar, supra*.

For Appendix Rule 9, our review of the record supports the trial court's decision. The rule states that "[e]ach party **should** encourage telephone and other electronic communications between the child(ren) and the other party" and "[e]ach party **should** promptly and politely respond to the other party's [electronic communications]." T.C.O. at 13 (emphasis added). The trial court indicated that this language encourages, but does not require, communication. *See id.* at 14. We agree that the use of the word "should" indicates permissive, rather than mandatory, language. Further, we note that "[e]ach court is the exclusive judge of contempts against its process." *Harcar*, 982 A.2d at 1235 (citations omitted).

However, we need not engage in an in-depth analysis of the language of the Appendix because the trial court explained that, even if the language was mandatory, it still would not have found Father in contempt because Mother failed to provide sufficient evidence. T.C.O. at 15. In her brief, Mother cites her testimony, which she states was credible, that Father does not permit her to speak to the Child. *See* Mother's Brief at 18. Mother also points to Father's testimony where he stated that he told Mother he would no longer encourage communication, "in retaliation to some alleged failure of Mother's." *See id.* at 18-19.

We reiterate that, as the petitioner, Mother had the burden of proving the three prongs of civil contempt by a preponderance of the evidence. *See* ***B.A.W.***, 230 A.3d at 406 (citations omitted). Whether Mother's testimony was credible and the nature of Father's intent were matters for the trial court to decide. Thus, the trial court was within its discretion to determine that Mother did not provide sufficient evidence to prove contempt.

For Appendix Rule 12 regarding the Child's rash, again, it was well within the trial court's purview to find Father more credible than Mother, and to accept Father's explanation of why he did not provide medical care for the Child's rash. That Father and Mother disagreed over the severity of the Child's rash, and the trial court found Father credible, does not amount to an abuse of discretion. Mother's first issue merits no relief.

Mother's second issue challenges the trial court denying her Petition.[3]
We begin with our well-settled standard of review for custody matters:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*Wilson v. Smyers*, 284 A.3d 509, 515 (Pa. Super. 2022) (quoting *S.T. v. R.W.*, 192 A.3d 1155, 1160 (Pa. Super. 2018)). Importantly, it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility." *Id.* at 520 (citation omitted). Further, "[t]he evidentiary record of a custody appeal will often support a conclusion different than the one reached by the lower court." *White v. Malecki*, 296 A.3d 1210, 1215 (Pa. Super. 2023). Thus, "'[i]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion in

---

[3] We have already addressed the contempt portion of Mother's second issue above. Thus, we focus our analysis here solely on the interim relief.

- 11 -

awarding custody to the prevailing party." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa. Super. 2019) (citation omitted).

In a custody-related matter, the court's "paramount concern is the best interests of the [child] involved." *A.L.B. v. M.D.L.*, 239 A.3d 142, 148 (Pa. Super. 2020) (citation omitted). When ordering any form of custody, a court must determine the best interest of the child by considering all relevant factors, giving substantial weighted consideration to specific factors that affect the safety of the child.[4] *See* 23 Pa.C.S.A. § 5328(a). However, we have clarified that a court is not required to address the Section 5328(a) factors when an order merely deals with a discrete and distinct issue. *See M.O. v. J.T.R.*, 85 A.3d 1058, 1063 (Pa. Super. 2014) ("Because the trial court did not make an award of custody, but merely modified a discrete custody-related issue, it was not bound to address the sixteen statutory factors in determining the [c]hildren's best interest.").

Additionally, Pennsylvania Rule of Civil Procedure 1915.13 provides, in relevant part:

---

[4] In 2024, the General Assembly enacted significant amendments to the custody factors "pursuant to Act of April 15, 2024, P.L. 24, No. 8 (known as 'Kayden's Law')." *Velasquez v. Miranda*, 321 A.3d 876, 886 n.6 (Pa. 2024). Kayden's Law expanded the factors to be considered in the court's best interest analysis and required the court to give "substantial weighted consideration" to, *inter alia*, the "safety of the child." *Id.* (citation omitted). These statutory amendments took legal effect on August 13, 2024. As Mother filed the instant Petition on September 20, 2024, Kayden's Law applies to this appeal.

> At any time after commencement of the action, the court may on application or its own motion grant appropriate interim or special relief. The relief may include, but is not limited to, the award of temporary legal or physical custody . . . .

Pa.R.C.P. 1915.13; *see also* 23 Pa.C.S.A. § 5323(b) ("[t]he court may issue an interim award of custody to a party who has standing . . . in the manner prescribed by the Pennsylvania Rules of Civil Procedure governing special relief in custody matters."). The explanatory comment to Rule 1915.13 indicates that it "contains a broad provision empowering the court to provide special relief where appropriate[,]" and it "specifically provides that the power of the court to grant special relief shall not be limited to the types of relief cataloged." Pa.R.C.P. 1915.13, Explanatory Comment.

On appeal, Mother argues that denying her Petition was not in the Child's best interest. *See* Mother's Brief at 13. Specifically, Mother alleges that the trial court "failed to consider whether Father's marijuana use, in spite of being a licensed medical marijuana user, adversely affects his ability to care for [the Child], or that Father's marijuana use adversely affects [the Child] directly." *Id.* Mother argues that she credibly testified that the Child returns from Father's care smelling like marijuana. *See id.* at 15. Mother took the Child to get drug tested, and he tested positive for cannabinoids, which caused Lawrence County Children and Youth Services and the New Castle Police Department to initiate investigations. *See id.* Mother also points to Father pleading guilty to public drunkenness as evidence of Father's alleged abuse of other substances. *See id.* at 16. Mother argues that the trial court erred by

- 13 -

"ignoring the evidence in support of Mother's request for interim relief permitted by Pa.R.Civ.P. 1915.13 without carefully considering the best interest of the child custody factors delineated in 23 Pa.C.S. § 5328(a) and issuing an award contrary to the best interests of the [C]hild[.]" *Id.*

The trial court explained its rationale for denying Mother's Petition as follows, in relevant part:

> With regard to the Mother's request for interim relief, the Mother's petition did not contain a prayer of relief, other than "WHEREFORE, based upon the foregoing, Mother respectfully requests that this Honorable Court enter the attached Order of Court suspending Father's periods of custody, pending disposition of a hearing...". However, at the time of the hearing on October 02, 2024, during closing arguments, the Mother requested the Father's visits be supervised pending a review conference. [. . .]
>
> The Mother's request for interim relief is based upon a claim of the [Child's] environmental exposure to marijuana while in the custody of the Father. [. . .]
>
> [. . .] The Father acknowledged, as he has through the duration of this custody action, that he smokes medical marijuana. However, [he] testified credibly that he does not smoke marijuana in the home or in the presence of the [Child]. This testimony was corroborated by the Paternal Grandfather, who also testified credibly. As noted above, the [trial court] has previously conducted an interview with the [Child], which did not reveal an issue regarding the Father's use of medical marijuana during his custodial time. Further, the [GAL] testified that, upon inquiry, the [Child] disclosed that the Father does not smoke marijuana in the [Child's] presence.
>
> Neither the Mother nor the Father called the [Child] as a witness at the time of the scheduled hearing. Furthermore, although the Mother filed a request for interim relief and contempt, she has not filed a petition to modify the [Final]

- 14 -

[C]ustody [O]rder. As noted above, this case has a long history of parental alienation and repeated and relentless requests by the Mother for the Father's custodial time to be suspended or supervised. [The trial court] has found the Mother to be disingenuous and uncredible on numerous occasions with the intent to limit the relationship between the Father and the [Child]. [The trial court], in its discretion, weighed the evidence and testimony presented and concluded that the requested relief, a suspension of the Father's custodial time, was not appropriate or warranted under the circumstances.

T.C.O. at 10-12 (footnote omitted).

We begin by noting, as the trial court observed, that Mother did not file a petition to modify custody in relation to this matter. Mother only filed a request for interim relief and contempt. For interim relief, paragraph 1 of Mother's Petition requested that the trial court: 1) suspend Father's custody pending an evidentiary hearing, and 2) schedule a hearing to hold Father in contempt. *See* Petition for Interim Relief and for Contempt of January 3, 2024 Order of Court and Appendix, 9/20/24, at 1 (unnumbered). At the end of her Petition, Mother requested that the trial court: 1) suspend Father's custodial periods, pending disposition of a hearing, and 2) schedule a hearing to "address the [C]hild's exposure to marijuana and Father's failures to comply with the . . . Order and Appendix, as well as Mother's request for counsel fees, costs, and expenses." *See id.* at 5-6 (unnumbered).

Our review of the record indicates that the trial court granted Mother's requested relief, in part. Upon consideration of Mother's Petition, the trial court entered an order temporarily modifying and limiting Father's physical custody of the Child. *See* Order of Court, 9/20/24. The court's order also

scheduled a hearing on Mother's Petition, as requested. *See id.* Therefore, although the court did not wholly suspend Father's custody, it temporarily limited his custody, thereby granting Mother interim relief, pending her requested hearing. The trial court was permitted to do this pursuant to its power to grant interim or special custody relief. *See* Pa.R.C.P. 1915.13.

However, because Mother never filed a petition to modify custody, we question the appealability of the order as it relates to interim relief. *See J.M. v. K.W.*, 164 A.3d 1260, 1263 (Pa. Super. 2017) (*en banc*) ("It is well-ensconced in Pennsylvania that an interim custody order is not appealable.") (citation omitted). Mother did not request a custody modification, so the trial court was not required to enter a new final custody order, which would have been a final, appealable order.

Put another way, even if we were to agree with Mother that the trial court should have granted her additional interim relief, the only relief she requested in her Petition was that the court suspend Father's custody pending a hearing. Because the court limited Father's custody and held the requested hearing, Mother's request for interim relief is now moot. *See Ramer v. Ramer*, 914 A.2d 894, 899 (Pa. Super. 2006) ("An issue before a [reviewing] court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect.") (citation omitted).

Further, interim relief is intended to be temporary and can be granted pending resolution of a permanent custody question. *See* Pa.R.C.P. 1915.13 ("The relief may include, but is not limited to, the award of temporary legal or

physical custody . . . .").  At the hearing, Mother testified that she wanted Father's visitation with the Child to be outside the home and supervised until the conclusion of the investigations.  *See* N.T. at 12.  In her brief, Mother asserts that, "[t]he suspension of custodial time where the purported perpetrator is a parent, during the pendency of a CYS or police investigation, is not an abnormal request[.]"  Mother's Brief at 24.  However, in her Petition, Mother did not request that the interim relief remain in place until the investigations concluded.

At the end of the hearing, in his closing argument, Mother's counsel indicated that Mother was again requesting relief on an interim basis.  *See* N.T. at 74 ("So we would request that on an interim basis, Your Honor -- I'm sorry. One more thing.").  Counsel later continued, "I believe there is enough evidence to have some supervised visits at a public setting for Father pending a review conference . . . ."  *Id.* at 74-75.  However, no "review conference" was pending.  Mother's counsel also discussed the ongoing investigations in his closing argument and stated, "[w]e all do need to see those results."  *Id.* at 74.  But, again, counsel did not specifically request that Father's custody be temporarily modified pending the results of any CYS investigation.  *See id.*

In short, Mother did not file a petition to modify Father's partial physical custody to supervised physical custody.  *See* T.C.O. at 11.  Further, Mother does not argue on appeal that she presented the trial court with a petition or

argument for a permanent modification of custody.[5]  If Mother wanted permanent relief, *i.e.*, a custody modification, then she did not appropriately plead or request such relief, and we are not empowered to grant it.

Assuming Mother can appeal the interim relief order, after granting relief, in part, the trial court held a full evidentiary hearing, during which it heard evidence related to Father's marijuana use.  Contrary to Mother's claim, the trial court's opinion shows that it considered Father's marijuana use related to the Child.  **See** T.C.O. at 11.  However, the court found Father's and Paternal Grandfather's testimony to be credible that Father does not smoke marijuana in the Child's presence.  **See id.**  The court also referenced the GAL's testimony that the Child disclosed to her that Father does not smoke marijuana in his presence.  **See id.**  The court noted that its previous interview with the Child did not reveal an issue regarding Father's use of medical marijuana.  **See id.**  After considering the evidence, the court ultimately found

_____

[5] We acknowledge that although "generally, the appropriate manner in which to request modification of a custody order is to file a petition for modification in compliance with [Pa.R.C.P. 1915.15], [this Court] ha[s] previously stated that 'this does not prevent the trial court, under appropriate circumstances to alter a custody/visitation [o]rder when it is in the best interest of the child to do so.'"  **C.A.J. v. D.S.M.**, 136 A.3d 504, 507 (Pa. Super. 2016) (citations omitted).  Specifically, "if notice of the proceeding adequately advises a party that custody will be at issue, a court *may* entertain the request to permanently modify a custody order after hearing in that proceeding."  **Id.** (citations omitted) (emphasis in original).  However, here, Mother does not advance an argument, nor are we persuaded, that the trial court should have considered Mother's Petition as a request to permanently modify the custody order.  Again, we reiterate that Mother never requested a permanent modification at the hearing.

that suspending Father's custody "was not appropriate or warranted under the circumstances." *Id.* at 12 (footnote omitted). We discern no abuse of discretion.

Mother's reliance on *H.R. v. C.P.*, 224 A.3d 729 (Pa. Super. 2019) does not persuade us otherwise. Mother cites this case for the proposition that the trial court was "explicitly required to 'consider not only a parent's history of drug and alcohol use but also their mental health and physical conditions' as well as how a parent's legal use of this substance 'impacts his or her child's best interest.'" Mother's Brief at 14 (citing *H.R.*). However, the trial court's opinion does not indicate that it failed to consider the Child's best interest in making its decision or ignored evidence, as Mother claims. Instead, the court simply found Father and Paternal Grandfather to be more credible than Mother.

On appeal, Mother argues that she testified credibly, and that Father's and Paternal Grandfather's testimony was a "selective truth." Mother's Brief at 15. Mother is essentially asking us to reweigh the evidence in her favor and find her testimony more credible. This we cannot do. *See Wilson*, 284 A.3d at 520 (indicating that it is not this Court's role to "re-find facts, re-weigh evidence, and re-assess credibility") (citation omitted). Additionally, less than a year before Mother filed her Petition, the trial court held a full custody trial and issued its Final Custody Order with findings of fact and conclusions of law. There, the court thoroughly analyzed the then-current Section 5328(a) custody factors, the Child's best interest, and Father's drug use. Although

- 19 -

Mother initially filed a notice of appeal from that order, she later withdrew it. **See** T.C.O. at 8, n.1.

Further, **H.R.** is distinguishable because that case involved a father's petition for custody modification. Here, as explained above, Mother did not file a petition to modify the Final Custody Order, nor did she argue for a permanent modification below or on appeal. **See J.M.**, 164 A.3d at 1269 ("A petition for special relief is not analogous to a motion for modification, which . . . implicates a thorough analysis of the children's best interest under § 5328(a) . . . .").

Additionally, Mother provides only one sentence of argument related to her contention that the trial court erred by not considering the Section 5328(a) child custody factors. **See** Mother's Brief at 16. Because Mother did not develop a complete argument to support this contention, with citations to legal authority or the record, her claim is waived. **See B.S.G. v. D.M.C.**, 255 A.3d 528, 535 (Pa. Super. 2021) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted). Mother's second issue merits no relief.

Mother addresses her third and fourth issues together in her brief. In her third issue, she asserts that the trial court abused its discretion and erred by reinstating Father's custody as provided in the Final Custody Order and in awarding Father an additional weekend of custodial time. Mother asserts that the trial court "erred in failing to consider whether such an award was in the

[C]hild's best interest consistent with the best interest factors detailed in 23 Pa.C.S. §5328(a)." Mother's Brief at 21. Additionally, Mother claims the trial court failed to consider the credible evidence and testimony supporting a finding that the award of additional custodial time was not in the Child's best interest. *Id.*

Further, Mother asserts that the trial court has "'a duty to consider any allegations of child abuse in rendering its custody decision.'" *Id.* at 21-22 (citation omitted). Mother argues that under Section 5328(a), the trial court was required to give substantial weighted consideration to the Child's safety. *See id.* at 22. Mother claims that it is "irrefutable" that the Child's repeated exposure to marijuana, through Father, is detrimental to the Child's physical, emotional, and psychological well-being. *See id.* Mother attempts to analogize this situation to when children are born and test positive for controlled substances which result in investigations, and, in some instances, termination of parental rights. *See id.* at 23. Thus, according to Mother, instead of reinstating Father's custody, it should have been suspended or ordered to be supervised. *Id.* at 24. Mother asserts that suspending custodial time when the alleged perpetrator of abuse is a parent, during the pendency of an investigation, is "quite commonplace." *See id.* (citations omitted). Thus, the trial court should have implemented safety restrictions and parameters on Father's use of marijuana. *See id.* at 24-25.

The trial court explained its rationale for reinstating Father's custody and awarding him make-up time as follows:

- 21 -

In her third issue complained of on appeal, the Mother argues that [the trial court] abused its discretion, and erred as a matter of law, by reinstating the Father's custodial time awarded in the [Final Custody Order] and in awarding Father an additional weekend of custodial time with the [] [C]hild. As noted above, Pa.R.Civ.P. 1915.13 permits the [trial] [c]ourt to grant interim relief upon motion of any party. At the time the Mother's petition for interim relief and contempt was presented in Motions Court, [the trial court] temporarily limited the Father's custodial time pending a hearing. Following an evidentiary hearing, the Mother's requests for interim relief and contempt were denied, for the reasons stated above. As there were no pending petitions to modify the [Final Custody] Order and [the trial court] found that the requested relief was not warranted or appropriate under the circumstances, [the trial court] properly reinstated the Father's custodial time as awarded in the controlling custody order and awarded the Father make-up time for the missed periods of custody. Such an award does not violate any statutory requirements and falls within the discretion of [the trial court].

T.C.O. at 16.

It is well-settled that when deciding a petition to modify custody, a trial court must evaluate the Section 5328(a) custody factors. *See E.D. v. M.P.*, 33 A.3d 73, 79-80 (Pa. Super. 2011). However, as discussed above, Mother did not file a petition to modify custody. Further, the trial court's October 9 order did not modify an award of custody. *See M.O.*, 85 A.3d at 1062 ("The cases in which we have applied Section 5328(a) have involved the award of custody as defined by Section 5323(a) or have involved a modification that also entailed a change to an award of custody."). The Final Custody Order granted Father partial physical custody of the Child. Upon Mother's Petition, the trial court temporarily decreased Father's custodial time, pending a

hearing, pursuant to its authority under Rule 1915.13. After the hearing, the court determined that Mother's Petition was unfounded and entered the October 9 order, which reinstated its Final Custody Order. This did not change the form of custody awarded to Father; his custody remained as partial physical custody and shared legal custody. *See S.W.D. v. S.A.R.*, 96 A.3d 396, 402 (Pa. Super. 2014) ("Therefore, we interpret 'form of custody,' to mean the seven types of custody listed at 23 Pa.C.S.A. § 5323(a). We hold that a trial court must apply the § 5328(a) factors and issue a written explanation of its decision when it orders any of the seven forms of custody provided for by the Act.").[6] In fact, the trial court's October 9 order reinstated what had been the status quo for most of 2024.

_____

[6] Although not argued by Mother, we acknowledge that the *S.W.D.* Court found that a father's petition for special relief placed the issue of physical custody before the trial court because the father was requesting a modification of physical custody. *See S.W.D.*, 96 A.3d at 406. Thus, this Court determined that the trial court was required to consider all the Section 5328(a) factors. *Id.* Further, this Court noted that "[e]ven if the trial court only reaffirmed its prior order, it nonetheless was ruling upon a request to change the form of physical custody and, therefore, bound to decide whether the prior order remained in [c]hild's best interest." *Id.* However, the instant matter is distinguishable because, as discussed above, Mother's Petition did not request a permanent modification of the award or form of physical custody. Instead, her Petition requested that Father's custody be suspended pending a hearing. At the hearing, Mother again requested interim relief. Although Mother's counsel mentioned supervised visits during closing arguments, Mother had not previously, in her Petition or at the hearing, requested that Father's physical custody be changed to supervised custody. Further, Mother is not arguing on appeal that she requested a permanent modification of custody, nor that the trial court's October 9 order improperly modified the parties' custody, without considering the Section 5328(a) factors. Instead of modifying the parties' custody, the trial court was restoring what had been the status quo before it granted Mother temporary relief, pending the hearing.

Although the trial court and Mother characterized the court's October 9 order as granting Father an "additional" weekend of custody, it did not alter the overall amount of Father's custodial time. The trial court observed that Father had lost custodial time while the court's interim order was in place from September 20 to October 9, 2024. Thus, the court awarded him an additional weekend of custody to make up for the lost time. On balance, Father's total amount of custody time was largely unchanged from the Final Custody Order; Father merely exercised his custody on a different weekend. *See C.M. v. M.M.*, 215 A.3d 588, 593 (Pa. Super. 2019) ("In cases where an order does not change the 'type' of the underlying custody award or change the amount of custodial time awarded to a party, this Court has held that Section 5328(a) is not implicated.") (citation omitted). We discern no abuse of discretion.

We also reject Mother's claims regarding child abuse. In reviewing the record, we see no evidence that Mother argued in her Petition or at the subsequent hearing that Father was abusing the Child. Nor does Mother point us to a place in the record where she made that argument. Although Mother made arguments at the hearing related to Father's marijuana use and her allegation that Father was exposing the Child to the same, she did not argue to the trial court that Father's actions constituted child abuse, which she seemingly attempts to argue on appeal. *See* Mother's Brief at 21-22, 24. The closest Mother got to this argument was her testimony related to the Children and Youth Services (CYS) and police investigations. *See* N.T. at 9-11. Mother

also admitted a letter from CYS into evidence.[7]  ***See id.*** at 10.  However, Mother admitted that she did not yet have the results of the CYS investigation.  ***See id.*** at 11.  Further, Mother never presented an argument to the trial court that it should find that Father abused the Child by exposing him to marijuana.  It is well-settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal."  Pa.R.A.P. 302(a).  Thus, Mother has waived this argument.

Additionally, Mother argues that the trial court erred by failing to place any restrictions or safeguards pertaining to Father's marijuana use in its October 9 order.  ***See*** Mother's Brief at 25.  However, again, we see no evidence that Mother requested such relief in her Petition or at the hearing, nor does Mother point us to any evidence of the same.  Further, although Mother is correct that the October 9 order does not include any safeguards on Father's marijuana use, when reviewing the entire record, it is clear that the trial court has been cognizant of Father's alleged drug use throughout this case.  ***See*** Order of Court, 1/3/24, at 16-17 (ordering Father to take an expanded panel hair follicle test, and conditioning Father's increased custodial time on the test results); ***see also, e.g.,*** Interim Custody Order of Court, 10/20/22, at 2-3 (unnumbered) (ordering Father and the Child to have

---

[7] We note that although Mother included the exhibits entered into evidence at the hearing in her reproduced record, all of those exhibits are not included in the certified record.  We remind Mother and her counsel that it is ultimately the appellant's responsibility to ensure that the certified record is complete on appeal to enable our appellate review.  ***See*** Pa.R.A.P. 1921, Note.

supervised visitation and for Father to take a hair follicle test); Interim Custody Order of Court, 1/6/23, at 2 (unnumbered) (continuing Father's supervised visitation and ordering him to take another hair follicle test); Interim Custody Order of Court, 3/3/23, at 2 (unnumbered) (granting Father partial custody rights and noting that Father had a negative drug screen in January 2023); Order of Court, 5/1/23, at 1 (unnumbered) (ordering Father to submit to an extended panel hair follicle test); Findings of Fact, Conclusions of Law and Order of Court, 1/3/24, at 13 (noting that "[b]ecause there is always a risk that a person who was once abusing controlled substances may again abuse substances, regular drug testing of the Father is called for."). Thus, we discern no abuse of discretion. Mother's third issue merits no relief.

Mother's fourth issue alleges that the trial court erred by failing to postpone the hearing or keep the record open, pending resolution of the open investigations against Father. However, the Argument section of Mother's brief contains only one sentence regarding this issue which states:

> The evidence disregarded by the [t]rial [c]ourt weighs considerably against the [t]rial [c]ourt's October [9], 2024 [o]rder, such that the best interests of the [C]hild were not served by awarding Father makeup time and failing to keep the record open until a final determination could be made by Lawrence County Children & Youth Service's investigation and the New Castle Police Department.

Mother's Brief at 25-26.

Mother cites nothing in the record, nor any case law, to support her assertion that the trial court erred by failing to keep the record open. She

also cites nothing to support her conclusory statement that failing to keep the record open was not in the Child's best interest.[8]  Because Mother has failed to develop this issue on appeal, she has waived it.  *See, e.g., B.S.G.*, 255 A.3d at 535 ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.") (citations omitted); *see also* Pa.R.A.P. 2119(a) (relating to the argument section of the appellate brief).

In sum, we discern no abuse of discretion or error of law in the trial court's decision to deny Mother's Petition.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 7/16/2025

---

[8] Certainly, if the CYS investigation discloses any issues of concern, Mother may file a request for modification of custody at that time.